IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| JANELLE HOHNKE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 04-0497C |
| v. | ) | (Judge Baskir) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

JOINT MEMORANDUM

In response to the Court's order dated November 27, 2006, the parties respectfully submit this joint memorandum.

I. Statement Of The Case

Ms. Hohnke seeks overtime compensation pursuant to the Fair Labor Standards Act, 29 U.S.C. § 207(a). See, Hohnke v. United States, 69 Fed. Cl. 170 (2005). The Government employed Ms. Hohnke as a police officer at the C.J. Zablocki Veterans Affairs ("VA") Medical Center in Milwaukee, Wisconsin from August 2, 1998 until March 8, 2003. She started work at the VA at the GS-5 pay level. In October, 1998, Ms. Hohnke became a canine enforcement officer. In December, 2000 she was promoted to Sergeant at the GS-7 pay level.

In August, 1999, Ms. Hohnke was assigned a dog known as "Little Man" for Ms. Hohnke to use as her police canine. The dog thereafter lived with Ms. Hohnke. The VA provided Ms. Hohnke with a Government vehicle that she used to transport Little Man to and from work.

The VA classified Ms. Hohnke's position as FLSA non-exempt. Ms. Hohnke regularly worked overtime, for which the VA paid her one and one-half times her usual pay rate. However, the VA did not pay Ms. Hohnke for care or training that she alleges that she provided to the dog at home, nor for the time spent transporting the dog to and from work in the Government vehicle.

Ms. Hohnke retained the title of canine enforcement officer but stopped performing canine officer duties on December 8, 2002, but continued working as a VA police officer until she left VA employment the following March. Little Man continued living with Ms. Hohnke until January 16, 2003, when the VA required Ms. Hohnke to return him to the facility.

Ms. Hohnke seeks overtime compensation for two hours of care and training for the dog at home per day. She calculates the value of this compensation as approximately $35,000-40,000, using a three year statute of limitation. She further seeks from one to one and one-half hours per day

for driving to work with the dog. She calculates the value of this compensation as $13,560.85, using a three year statute of limitation. Ms. Hohnke also seeks liquidated damages doubling these amounts, plus pre- and post-judgment interest and attorney fees.

In addition, Ms. Hohnke signed a settlement agreement with the VA regarding return of Little Man to her. She alleges that she expected that Little Man would be returned in the condition she provided him to the VA. Instead, she alleges that Little Man had developed an infection on his tail which ultimately required amputation of part of his tail. Ms. Hohnke seeks compensation for the veterinarian bills for the amputation.

II. Contested Issues Of Fact And Law

1. Whether Ms. Honhke was required to care for and train the dog while at home and, if so, what is the length of time for which she is entitled to FLSA compensation.

Plaintiff States

Plaintiff will testify that she was trained as a canine officer when she was in the military, prior to her employment with the VA. Furthermore, she was the only officer trained as a canine officer at the Milwaukee VA. As such, she was the only person at the Milwaukee VA with the training to

determine how to maintain Little Man's skills as a police canine.

She will testify that she followed the VA guidelines created by the VA Veterinarian on the care and training of Little Man. She will testify that she was not provided adequate time to feed, care for, or train Little Man each day during work hours. She will testify that it was not possible to feed Little Man during work hours, as that would have been unhealthy for him under the requirements of their work regimen. She will testify that she requested that she be paid for the time to feed, care for and train Little Man each day and her request was denied.

Ms. Hohnke will testify that, although she was paid for off-site training with Little Man, this training was inadequate to maintain his skills. Ms. Hohnke will testify that, although she was occasionally allowed to take Little Man to be groomed at the Milwaukee VA's expense, this grooming was not adequate for the day-to-day maintenance of Little Man. She will further testify that she had to clean the Government vehicle that she used to transport Little Man during her off-duty hours because there was no time available for her to clean the vehicle during her regular shift. She will also testify that her home care, such as vacuuming, increased significantly with her responsibilities for care of the dog – Little Man sheds a lot.

Furthermore, government policies required that she maintain a clean and healthy environment for Little Man.

This writer is unaware of any cases where a canine officer was denied compensation for at-home care of a police canine. A sampling of the cases which allow for such pay are cited as follows: *Nichols v. City of Chicago,* 789 F. Supp. 1438 (N.D. Ill. 1992); *Levering v. District of Columbia,* 869 F. Supp. 24 (D.D.C. 1994); *Andrews v. Dubois,* 888 F. Supp. 213 (D. Mass. 1995); *Leever v. Carson City,* 360 F.3d 1014 (9th Cir. 2004); *Bull v. United States,* 68 Fed. Cl. 276 (2005) and 68 Fed. Cl. 212 (2005).

It is reasonable to expect that a canine officer would spend two hours per day to feed, care for and train a police canine. See OPM Decision No. F-0083-07-01, provided to this court a docket no. 47. Furthermore, Ms. Hohnke's position description and the VA Standard Operating Procedure regarding the VA Police Canine Unit contemplated that she would spend time during her off-duty hours caring for and training Little Man. Ms. Hohnke will testify that she spent two hours per day to feed, care for and train Little Man, on average, during her off-duty hours.

Defendant States

Ms. Hohnke's supervisors, Chief Jerry Brown and Deputy Chief James Runge, will testify that the VA allowed Ms. Hohnke to feed, care for, and train the dog each day during work hours. Thus, the VA has numerous documents which demonstrate that it paid Ms. Hohnke to attend training sessions off-site with the dog. In addition, the VA has other records which establish that Ms. Hohnke was allowed to take the dog for grooming and veterinary care while on duty. It was not necessary for Ms. Hohnke to walk the dog while at home because the dog received exercise during duty hours, by among other things, participating in foot patrol activities.

During her duty days, Ms. Hohnke may have provided incidental care to the dog at home, such as letting the dog outside in the morning. However, defendant is not obligated to compensate Ms. Hohnke for activities which require minimal time. E.g., Bobo v. United States, 136 F.3d 1465 (Fed. Cir. 1998).

If the Court finds that Ms. Hohnke was required to provide care for the dog while at home, defendant states that the two hours per day that she seeks is far beyond what it was reasonable for her to have provided to the dog in light of the opportunities she had to care for the dog at work, as well

as the amount of care that a dog generally requires. Only two of the cases cited by Ms. Hohnke speak to how much time per day would be awarded to the dog handlers. In Bull v. United States, 68 Fed. Cl. 276 (2005) (CAFC No. 06-5038), the plaintiffs were awarded 1.5 hours of overtime per day for constructing training aids off duty, a circumstance not applicable here. In Levering v. Dist. of Columbia, 869 F. Supp. 24, 26-27 (D.D.C.1994), the court awarded dog handler 30 minutes per day for time spent exercising, feeding, and otherwise caring for dogs. Finally, defendant states that the OPM decision cited by Ms. Hohnke is not applicable here because that case involved a VA facility which, by policy, required the dog handler to work with the dog from 1-2 hours per day off-duty.

2. Whether Ms. Hohnke is entitled to overtime compensation for driving to work in a Government vehicle with the dog.

Plaintiff States

Ms. Hohnke is currently considering whether she will withdraw her claim for overtime compensation for driving to work in a Government vehicle with Little Man in light of *Adams v. U.S.,* 2006 U.S. App. LEXIS 31065 (Fed. Cir. Dec. 18, 2006).

Defendant States

In Bobo, the Federal Circuit held that border patrol dog handlers who drove to work with their dogs are not entitled to overtime compensation for this activity. Bobo, 136 F.3d at 1467-68. The decision in Bobo bars Ms. Hohnke's claim.

3. If the Court awards Ms. Hohnke overtime compensation, should the Court exercise its discretion to reduce or deny liquidated damages because defendant acted in good faith and with reasonable grounds.

Plaintiff States

It is the defendant's burden to show that it acted in good faith and with reasonable grounds. However, the Office of Personnel Management (OPM) decision referred to above applied specifically to VA facilities. In that decision, the agency was ordered as follows:

> As provided in section 551.708 of title 5, Code of Federal Regulation (CFR), this decision is binding on all administrative, certifying, payroll, disbursing, and accounting officials of agencies for which OPM administers the Act. The agency should identify all similarly situated current and, to the extent possible, former employees, ensure that they are treated in a manner consistent with this decision, and inform them in writing of their right to file an FLSA claim with the agency or OPM.

OPM Dec. No. F-0083-07-01, p. ii.

The decision involved a canine officer who was due overtime for at-home feeding, care of and training for the particular VA's facility.

Ms. Hohnke specifically denies that she was provided the opportunity to feed, care for or train Little Man at work.

Defendant States

The FLSA provides that plaintiffs wrongfully denied overtime compensation are entitled to damages equal to the amount of overtime pay due, thus a double recovery. Angelo v. United States, 57 Fed. Cl. 100, 104 (2003); 29 U.S.C. § 216(b). However, if the agency can show that its action was in "good faith" and with "reasonable grounds," then the Court may exercise its discretion to reduce or deny liquidated damages.

If the Court awards Ms. Hohnke damages, the Court should decline to award liquidated damages, or reduce them, because defendant acted in good faith with reasonable grounds for its actions. This is not a typical FLSA case in that defendant did not attempt to avoid paying Ms. Hohnke FLSA compensation. Indeed, agency records establish that defendant paid Ms. Hohnke approximately 20 hours of overtime per week for many of the weeks in the three years preceding the filing of the complaint. Defendant further provided Ms. Hohnke with time during her shift to feed, care for, and

train the dog each day during work hours. Ms. Hohnke's supervisors will testify that, because the VA provided time to Ms. Hohnke to perform these activities at work, they were unaware that Ms. Hohnke had to provide any care to the dog while at home on the days she worked, other than care requiring minimal time.

Finally, defendant states that the OPM decision cited by Ms. Hohnke is not applicable here because that case involved a VA facility which, by policy, required the dog handler to work with the dog from 1-2 hours per day off-duty.

4. Whether the Court should apply a three year (rather than a two year) statute of limitations because defendant acted in willful violation of the FLSA.

Plaintiff States

As noted above, the VA knew or should have known that it was required to provide Ms. Hohnke with overtime for the at-home feeding, care of and training of the police canine because the Office of Personnel Management had specifically instructed the agency that it was to provide such overtime. Furthermore, since all the courts which have examined the issue, including the Federal Court of Claims, have found that canine

officers are due overtime at time-and-a-half for the at-home care, feeding and training of police canines, it is also reasonable to conclude that the VA knew or should have known that such overtime compensation was due Ms. Hohnke.

Defendant States

The usual statute of limitations period for violations of the FLSA is two years. However, the Portal to Portal Act provides that "a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). The Supreme Court, construing § 255(a), has defined "willful" to mean "that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988).

This is not a typical FLSA case in that defendant did not attempt to avoid paying Ms. Hohnke FLSA compensation. Indeed, agency records establish that defendant paid Ms. Hohnke approximately 20 hours of overtime per week for many of the weeks in the three years preceding the filing of the complaint. Defendant further provided Ms. Hohnke with time during her shift to feed, care for, and train the dog each day during work

hours. Ms. Hohnke's supervisors will testify that, because the VA provided time to Ms. Hohnke to perform these activities at work, they were unaware that Ms. Hohnke had to provide any care to the dog while at home on the days she worked, other than care requiring minimal time.

III. <u>Witness Lists</u>

<u>Plaintiff's Witnesses</u>

All of plaintiff's witnesses are located in the Milwaukee, Wisconsin, area, with the exception of the plaintiff, Janelle Hohnke.

1. Janelle Hohnke

Ms. Hohnke will testify regarding the facts and circumstances surrounding her duty to care for the police canine known as Ury, also known as Little Man. She will also generally testify regarding her regular duties, scheduling of her duties, the time she had available to care for Little Man during regular working hours, and the time she spent caring for Little Man during her off-duty hours.

She will also testify that she signed a settlement agreement with the VA under which Little Man was to be returned to her in the same condition she surrendered him to the VA. She will testify that after he was returned to her he had an injury to his tail which required part of his tail be

amputated. She will testify regarding the amount of the veterinarian bills for his care and the amputation.

2. Bob and Linda Hohnke

Bob and Linda Hohnke are Janelle Hohnke's parents. They will testify regarding the off-duty care and training Plaintiff gave Little Man while she was employed by the Veterans Administration in Milwaukee, Wisconsin. They will also testify regarding the care they have provided to Little Man for the period between July 13, 2005 and May 29, 2006. They will identify the logs they created regarding his care for that period.

3. Kelly Franke

Ms. Franke will testify that she worked at the Veterans Administration during the time that Ms. Hohnke was responsible for and worked with Little Man. She will testify that she observed Hohnke and Little Man work together. She will testify that she lived with Ms. Hohnke for part of the relevant period and that she observed Ms. Hohnke care for and train Little Man while Ms. Hohnke was otherwise off-duty.

3. Les Ganas
4. Shawn Busse
5. Nicki Canady

Ganas, Busse and Canady will testify that they worked at the Veterans Administration during the time that Ms. Hohnke was responsible for and worked with Little Man. They will testify that they observed Hohnke and Little Man work together. They will testify that while Hohnke and Little Man were at the Veterans Administration, they were working at their regular shift work patrolling the facility. They will testify that there was no time to perform grooming, training or other care-taker duties.

6. Chief Jerry Brown
7. Captain James Runge

Brown and Runge will testify that they were aware that Hohnke had no time to care for or train Little Man during her regular shift work. They will testify that they were aware that the Veterans Administration has a policy or procedure regarding the responsibilities of the canine officer and how the canine officer is to care for the canine. They will testify that they were aware that Hohnke followed the policy or procedure.

Defendant's Witnesses

Defendant intends to call Chief Jerry Brown, Deputy Chief James Runge, and Sergeant Bill Poirier as witnesses. They are all located in the Chicago, IL area.

Chief Brown and Deputy Chief Runge will testify as described in our response to issue no. 1 above.

Sergeant Poirier is a VA canine enforcement officer at a VA facility in North Chicago, IL. He will testify that he is compensated for four hours overtime per pay period to care for his police canine. He will testify that this compensation is adequate given the time required for him to provide care to the dog while at home.

s/Brenda Lewison
BRENDA LEWISON
Law Office of Arthur Heitzer
633 West Wisconsin Avenue
Suite 1410
Milwaukee, WI 53203
(414) 273-1040

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/Mark A. Melnick
MARK A. MELNICK
Assistant Director

s/Michael N. O'Connell
MICHAEL N. O'CONNELL
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
Washington, D.C. 20530

(202) 353-1618
(202) 514-8624 (fax)